UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

In re                                                          Chapter 7

INFINISTAFF, LLC,                                  Case No. 10-32733 (JAM)

      Debtor.

---

**UNITED STATES TRUSTEE'S OBJECTION AND MEMORANDUM OF LAW
CONCERNING DEBTOR'S PROFESSIONALS' RETENTION APPLICATIONS
SEEKING BANKRUPTCY COURT APPROVAL OF NUNC PRO TUNC RELIEF**

    William K. Harrington, United States Trustee for Region 2 ("United States Trustee") respectfully submits this Objection and Memorandum of Law concerning the several pending retention applications filed by some of certain accounting and legal professionals wherein they each, respectively, state that they provided services to Infinistaff, LLC ("Debtor") during the Chapter 11 phase of its instant bankruptcy case but failed to timely seek or obtain approval of those retentions by the Bankruptcy Court[1] ("*Nunc Pro Tunc* Applicants/Applications").

    The Masia Application, although utilizing "*nunc pro tunc*" as a label, fails to provide any support which the Bankruptcy Court might utilize to grant the requested relief. In the case of the two law firm applications, although the alleged facts differ, both rely upon allegations that each was retained by Debtor's principal Jason Sheehan ("Sheehan") and that Sheehan failed to inform them that the Debtor was a Chapter 11 debtor. Both of the law firm applications suggest that the failure of Sheehan to tell them of the Debtor's bankruptcy status relieved them of any further duty to inquire about or determine the bona fides of Sheehan's ability to bind the Debtor to the

---

[1] The respective nunc pro tunc retention applications of: Accountant Frank Masia (ECF Doc. # 266); North Carolina Attorney Jill Quattlebaum Byrum (ECF Doc. # 267) superceded by the Amended Application of law firm of Sumrell, Sugg, Charmichael, et al (ECF Doc. # 306); and the law firm of Robinson & Cole (ECF Doc. # 299).

retention of each respective law firm. Neither law firm application considers what it might have easily done itself to insure that its representation of the Debtor required more than the "agreement" of Sheehan.

Should the Bankruptcy Court grant one or more of the *Nunc Pro Tunc* Applications, there are additional related issues which are not presently before the Bankruptcy Court which concern the ability of the Nunc Pro Tunc Applicants to keep monies they have already been paid or their ability to seek additional compensation given that they each has only a Chapter 11 administrative claim which shares equal distribution status with several millions of dollars of unpaid federal and state taxes which have accrued post-petition and which were not paid during the Chapter 11 phase of the Debtor's bankruptcy case and those higher priority Chapter 7 administrative expenses currently being accrued in the Chapter 7 phase of the Debtor's bankruptcy case. Those issues will ripen as Chapter 7 Trustee Kara Rescia is able to determine the value of the Debtor's Chapter 7 estate.

The United States Trustee has filed objections to the Nunc Pro Tunc Applications. Those objections do not suggest that *nunc pro tunc* relief could never be granted in such retention applications; however, the United States Trustee does suggest that none of the Nunc Pro Tunc Applications have, within their respective four-corners, presented a case which passes muster that their failure to obtain timely approval of their respective retentions is a result of "extraordinary circumstances," and it is that standard of "extraordinary circumstances" which the Nunc Pro Tunc Applications must meet in order for the Bankruptcy Court to grant their untimely retention applications.

The necessity of demonstrating "extraordinary circumstances" has its genesis in the

Second Circuit's "*per se*" rule prohibiting payment to professionals for services rendered to the estate prior to approval by the court[2]. *See e.g. In re Futuronics Corp.*, 655 F.2d 463, 469 (2nd Cir. 1981). The primary exception to the "*per se*" is where, as here, an applicant seeks to have its retention approved *nunc pro tunc*. *See e.g. In re Triangle Chemicals, Inc.*, 697 F.2d 1280, 1289 (5nd Cir. 1983). As *nunc pro tunc* orders effectively subvert the *per se* rule, they are generally disfavored in the Second Circuit. *See In re Futuronics Corp.*, 655 F.2d at 469.

It is a high standard which an applicant must meet in order for a retention application to be given *nunc pro tunc* effect. The applicant must pass a two-prong test which requires the Bankruptcy Court to find that: "(i) if the application had been timely, the court would have authorized the appointment and (ii) the delay in seeking court approval resulted from extraordinary circumstances." *In re Keren Limited Partnership*, 189 Fed. 3d 86, 87 (2nd Cir. 1999). The United States Trustee does not dispute that any of the Nunc Pro Tunc Applications could likely have obtained Bankruptcy Court approval if the Debtor had timely sought their retention or employment. The United States Trustee limits his objection to the second prong of the Keren test which requires that the Nunc Pro Tunc Applications demonstrate that the reason for the respective untimely applications be due to extraordinary circumstances.

"Extraordinary circumstances" is not defined by the United States Bankruptcy Code. The determination of whether facts presented support the Bankruptcy Court's finding that "extraordinary circumstances" exist so as to support the granting of nunc pro tunc relief is left to the sound discretion of the Bankruptcy Court. Factors which courts have considered under the

---

[2] The United States Supreme Court "adopted" (or clarified) this *per se* rule in its decision *Lamie v. United States Trustee*, 540 U.S. 526 (2004) (No compensation to Debtor's professionals unless employed under Section 327).

"extraordinary circumstances" test include: (i) whether the applicant or some other person bore responsibility for applying for approval; (ii) whether the applicant was under time pressure to begin service without approval; (iii) the amount of delay after the applicant learned that initial approval had not been granted; (iv) the extent to which compensation to the applicant will prejudice innocent third parties; and (v) other relevant factors. *In re Keren Limited Partnership*, 225 B.R. 303, 307 (S.D.N.Y. 1998), *aff'd. In re Keren Limited Partnership*, 189 F.3d 86, 87 - 88 (2nd Cir. 1999).

Unfortunately, the United States Trustee has not found a United States Supreme Court or Second Circuit decision which sets forth every circumstance which constitutes "extraordinary circumstances nor has he discovered such a case with a fact pattern whereby the applicant's support for "extraordinary circumstances" is simply "the debtor's principal didn't tell me." There are cases, however, where the courts have informed as to what does not constitute "extraordinary circumstances." "'Simple neglect' on the part of a debtor in failing to take timely action does not constitute the 'extraordinary circumstances' necessary to justify nunc pro tunc relief." *In re Aquatic Development Group, Inc.*, 352 F.3d 671, 679 (2nd Cir. 2003) (quotation omitted). "Excusable neglect" has been applied to nunc pro tunc retention of professionals within the Second Circuit prior to the *Keren* decision. *See In re 245 Associates. LLC*, 188 B.R. 743, 750 - 51 (Bankr. S.D.N.Y. 1995).[3]

Factors to be considered in finding "excusable neglect" in a nunc pro tunc retention scenario include: "[1] the danger of prejudice to the debtor; [2] the length of the delay, including

---

[3] In a single instance, "excusable neglect" has been utilized as satisfying the second prong of the Keren test after that decision. The reason for the court doing so is not apparent in that later decision and must be considered an aberration. *See In re Stylianou*, 2010 WL 3719303.

whether it was within the reasonable control of the movant; and [3] whether the movant acted in good faith." *In re Bronx 439 E. 135th Street D. T. Building Corp., 2014 WL 200996* at *5 [FN4] (citations omitted). "Excusable neglect" is not "extraordinary circumstances" but is a "less stringent" standard. Id.

In a non-retention instance, a bankruptcy court has stated that "the hallmark of the existence of extraordinary circumstances is a lack of fault by the moving party." *In re Cunningham*, 506 B.R. 334, 343 (Bankr. E.D.N.Y. 2014) *citing* 12 Moore's Federal Practice, at Section 60.48[3][b]. Related to the concept of fault is the issue of what the Nunc Pro Tunc Applicants did or could have done in order to give each of them the opportunity to learn of the Debtor's Chapter 11 case and their respective responsibilities under the Bankruptcy Code. The United States Trustee suggests that there was available to the Nunc Pro Tunc Applicants a foolproof, simple action which each could have taken to determine whether or not the Debtor was, in fact, presently a Chapter 11 debtor. That action, simply, involved a search of the national PACER[4] database which could have been accomplished in less than five minutes. A PACER search is not an extraordinary task especially for a law firm, may be had for almost no cost, and the failure of a law firm to undertake that simple action does not constitute an extraordinary circumstance.

Besides the PACER system, there are other tools which are available to professional accountants and law firms to find out whether or not a client or potential client has the

---

[4] PACER: Public Access Court Electronic Records. A national database containing all of the current (and a great deal of historical) federal court cases including, but not limited to bankruptcy cases and which is available to the public and constantly utilized by law firms throughout the United States.

-5-

wherewithal and the authorization to employ or retain them.  Prior to the instantaneous access to information via the Internet, law firms would obtain a Dun & Bradstreet report on potential clients to insure their creditworthiness, the bona fides of the person seeking to act for a corporate client, and ability to afford the firm's services.  Such a report would reveal a bankruptcy filing by the Debtor.  That and other services abound and continue to be utilized by accountants, law firms and other businesses.   Less traditionally but even more prevalent and universally practiced today is to inquire within the various vehicles of social media or the more general blogosphere[5] to obtain information about a potential client, customer or employee.

Although a national PACER search would have informed the Nunc Pro Tunc Applicants of the Debtor's Chapter 11 case, the United States Trustee does not suggest that a *per se* rule exists (or should exist) that requires all accountants and law firms everywhere to conduct first an initial PACER search and then to incessantly "re-test" all of their clients every month in order to establish the "extraordinary circumstances" required by the Second Circuit's Keren test.  That would be no more fair that would the Nunc Pro Tunc Applicants relying upon a FDH[6] defense which would only  require that an applicant:  not ask questions, not independently inquire and take no action to protect itself in order to qualify as being "extraordinary circumstances."

Bankruptcy is no longer a foreign concept to the accounting or legal professions or to other businesses or to the public at large.  For good or ill, a considerable minority of those

---

[5] The term "blogosphere" was coined in 1999 to represent the growing number of "web-logs" ("blogs") which allowed the internet publishing of opinions on a growing universe of topics, interests and entities which could be found by users utilizing internet search engines such as Google.  The blogosphere has also been said to have established the democratization of information even more than the movable-type printing press.

[6] FDH: "Fat, Dumb and Happy" includes the synonym "complacent."  Thesaurus.com

eligible to file for bankruptcy have done so and continue to do so. Bankruptcy filings are a fact of life which have caused both businesses and individuals to change the way they conduct their financial lives. While unfortunate, it is nonetheless true that the Nunc Pro Tunc Applicants would have been far better off if each had considered the possibility that the Debtor was in Chapter 11 and either asked the question and/or verified that it was not.

What the United States Trustee seeks is that the Nunc Pro Tunc Applicants be given every reasonable opportunity to explain what actions each took and explain why each failed to take such actions as would have demonstrated their respective responsibilities under the Bankruptcy Code in relation to each's respective retention or employment by the Debtor so that the Bankruptcy Court can, with specificity, determine whether those actions and failures collectively constitute "extraordinary circumstances" within the meaning of the Second Circuit's Keren test. This, with the exception of simply contending that Sheehan didn't tell them about the Debtor's bankruptcy, as yet, has not be established by the Nunc Pro Tunc Applications.

Dated: June 25, 2014  
     New Haven, CT

Respectfully submitted,  
WILLIAM K. HARRINGTON  
United States Trustee for Region 2

By:   /s/ Steven E. Mackey  
Steven E. Mackey/ct09932  
USDOJ Trial Attorney  
Giaimo Federal Building, Room 302  
150 Church Street  
New Haven, CT 06510  
(203) 773-2210